UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARN'I WASHINGTON,

Plaintiff,

v.

AVANATH CAPITAL MANAGEMENT, LLC,

Defendant.

No. 2:25-cv-02170-DC-CSK

ORDER GRANTING DEFENDANT'S AMENDED MOTION TO COMPEL ARBITRATION AND STAYING ALL PROCEEDINGS PENDING COMPLETION OF ARBITRATION

(Doc. No. 16)

This matter is before the court on Defendant's amended[1] motion to compel arbitration of Plaintiff's claims. (Doc. No. 16.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 18.) For the reasons explained below, the court will grant Defendant's motion to compel arbitration and stay all proceedings pending completion of arbitration.

/////

[1] Defendant's initial motion to compel arbitration was filed when this case was assigned only to a magistrate judge, which necessitated reassignment of this case to a district judge. (*See* Doc. Nos. 6, 8.) That district judge subsequently directed the Clerk of the Court to reassign this case to a different district judge, ultimately leading to the assignment of this case to the undersigned. (*See* Doc. Nos. 13, 14.) Defendant thereafter filed its amended motion to compel arbitration, in order to comply with the undersigned's Standing Order and to notice the motion for a hearing before the undersigned.

## BACKGROUND

On August 3, 2025, Plaintiff Marn'i Washington initiated this action in this court against her former employer, Defendant Avanath Capital Management, LLC. (Doc. No. 1.)

In her complaint, Plaintiff alleges as follows. In 2024, while she worked for Defendant, Plaintiff took an approved temporary leave of absence to participate in an emergency response assignment with the Federal Emergency Management Agency ("FEMA"). (*Id.* at ¶¶ 1, 11.) Plaintiff was actively engaged in the interview process for a promotion to a senior leadership role within Defendant's organization at the time of her temporary leave. (*Id.* at ¶ 12.) While serving in her role with FEMA, Plaintiff became the subject of false and politically charged accusations that she deliberately avoided providing services to homes displaying signs in support of then-presidential candidate Donald Trump. (*Id.* at ¶ 13.) Plaintiff subsequently made public appearances to defend herself against the allegations. (*Id.* at ¶ 19.) When Plaintiff returned to work for Defendant, Defendant terminated Plaintiff's employment due to her violation of the company's "core values." (*Id.* at ¶ 15.) Defendant then issued a public statement confirming Plaintiff's termination and referencing the allegations against Plaintiff. (*Id.* at ¶ 16.) Defendant's statement was allegedly false and defamatory. (*Id.* at ¶ 17.) Further, Defendant did not give Plaintiff an opportunity to respond before terminating her and issuing the statement. (*Id.* at ¶¶ 17, 18, 19.) Plaintiff alleges Defendant thus defamed her and retaliated against her for exercising her First Amendment rights (*Id.* at ¶¶ 25, 49.)

Based on those allegations, Plaintiff brings the following causes of action against Defendant: (1) retaliation and violation of the First Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983; (2) wrongful termination in violation of public policy; (3) retaliation in violation of California Labor Code §§ 1101 and 1102; (4) retaliation in violation of California Labor Code § 98.6; (5) violation of California Labor Code § 96(k); (6) breach of implied covenant of good faith and fair dealing; (7) defamation; (8) failure to prevent retaliation pursuant to California Government Code § 12940(h); and (9) intentional infliction of emotional distress. (Doc. No. 1.)

Defendant filed the pending motion to compel arbitration on February 4, 2026. (Doc. No.

16.) Defendant contends that after Plaintiff was hired, she reviewed, acknowledged, and signed a valid and binding arbitration agreement on March 8, 2023. (Doc. No. 16-3 at 8.) Further, Defendant contends that the arbitration agreement is enforceable and covers Plaintiff's claims in this action. (*Id.* at 13.) Defendant also contends that the arbitration agreement's validity and enforceability must be determined by an arbitrator, not the court. (*Id.* at 9.)

Plaintiff filed an opposition on February 15, 2026. (Doc. No. 17.) In her opposition, Plaintiff contends that the language of the arbitration agreement requires the court to decide matters of arbitrability, including questions about the validity and scope of the arbitration agreement. (*Id.* at 7–8.) Plaintiff also contends that the arbitration agreement is unconscionable and that Plaintiff did not meaningfully agree to arbitrate her claims. (*Id.* at 8–10). Additionally, Plaintiff contends that, in any event, Defendant waived its right to arbitration through conduct that was inconsistent with that right. (*Id.* at 5–7.)

Defendant did not file a reply in support of the pending motion.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a national policy favoring arbitration when [] parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). For this reason, a court's role in considering a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the court answers both questions in the affirmative, it must 'enforce the arbitration agreement in accordance with its terms.'" *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716

(9th Cir. 2020)).

In determining whether a valid arbitration agreement exists, federal courts apply state law principles of contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). In California, a contract is formed if (1) the parties are capable of contracting; (2) they consent; (3) there is a lawful object; and (4) there is sufficient cause or consideration. Cal. Civ. Code § 1550. A party's consent to "an agreement to arbitrate may be express, as where a party signs the agreement" or "implied in fact." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US) LLC*, 55 Cal. 4th 223, 236 (2012). "Despite the strong policy favoring enforcement of arbitration agreements, generally applicable contract defenses such as fraud, duress, or unconscionability are applicable to arbitration agreements as they are to other contracts." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 951 (N.D. Cal. 2015) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). A defendant seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *See Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022).

## ANALYSIS

### A. Existence of Arbitration Agreement

The court begins with the threshold question of whether the parties formed an agreement to arbitrate, which Plaintiff disputes. Defendant maintains that the arbitration agreement "is a delegation agreement, in which the parties have agreed to have the arbitrator, not the courts, decide threshold issues of the scope, enforceability, and validity of the Arbitration Agreement." (Doc. No. 16-3 at 10.) However, "a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause." *Caremark LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022).

Courts apply state law in determining whether a valid contract to arbitrate exists. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). The parties do not specifically address which state's law is applicable to this dispute, but both analyze the existence of the agreement under California law. (Doc. Nos. 16-3 at 14–17; 17 at 5–11.) Under California law, "[a]ll persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil

rights." Cal. Civ. Code § 1556. Further, under California law, "[o]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms," which is true regardless of whether the party read and understood the terms before signing. *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 39 Cal. App. 4th 1042, 1049 (2001).

In challenging the existence of a contract, Plaintiff does not contend that any of these exceptions of § 1556 exist here such that she was incapable of entering a contract, rather she only "disputes that she knowingly and voluntarily assented to arbitration in a meaningful way." (Doc. No. 17 at 8.) Plaintiff also does not argue that she did not electronically sign the arbitration agreement. Indeed, Defendant attaches to its motion copies of its electronic records indicating that Plaintiff's signature was electronically affixed to the arbitration agreement on March 8, 2023, the day after Defendant hired Plaintiff. (*See* Doc. Nos. 16-2 at 13; 16-3 at 8). In California, an electronic signature is a valid form of acceptance. *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1061 (2016) ("Under Civil Code section 1633.7 . . . an electronic signature has the same legal effect as a handwritten signature." (citing *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 843 (2014))). The party seeking to compel arbitration is not initially required to authenticate an opposing party's electronic signature. *Id.* at 1059. Once the moving party meets its initial burden to prove the existence of an arbitration agreement, by, for example, attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement. *Brockman v. Kaiser Found. Hosps.*, 114 Cal. App. 5th 569, 587 (2025), *reh'g denied* (Oct. 16, 2025), *review denied* (Dec. 17, 2025). The opposing party can meet its burden in several ways, including by declaration under penalty of perjury that the party does not remember seeing the agreement or that the party does not remember signing the agreement. *Id.*

Plaintiff raises the "question whether [Defendant] presented the arbitration terms in a manner that allowed informed consent rather than coercive acquiescence," (Doc. No. 17 at 9) but provides no answer to that question and produces no evidence challenging the authenticity of the agreement or her signature. Because the authenticity of the agreement and Plaintiff's signature is not disputed, and because Plaintiff offers no evidence to show that she did not read or understand

the agreement, Plaintiff is deemed to have assented to the terms of the arbitration agreement, regardless of whether she fully reviewed and understood the terms before signing. *See Brockman*, 114 Cal. App. 5th at 587 ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.") (citation omitted).

Furthermore, the arbitration agreement is entered into for the lawful purpose of efficiently resolving employment disputes. Indeed, "California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes." *Kostandian v. Am. Honda Motor Co.*, 120 Cal. App. 5th 872, 878 (2026) (quoting *Avila v. S. Cal. Specialty Care, Inc.*, 20 Cal.App.5th 835, 843–844 (2018)). Additionally, the contract is supported by sufficient consideration because both Plaintiff and Defendant in the agreement mutually released their right to resolve employment disputes in court. (Doc. No. 16-2 at 10–11; *see Garner v. Inter-State Oil Co.*, 52 Cal. App. 5th 619, 625 (2020), *as modified* (July 23, 2020) (finding an arbitration agreement was supported by sufficient consideration because "the parties made mutual, obligating promises to arbitrate").

Therefore, the court finds that an arbitration agreement exists between the parties[2] covering the claims asserted in the complaint.[3]

**B. Delegation**

The court next turns to the question of whether the arbitration agreement delegates the authority to decide threshold issues of the scope, enforceability, and validity of the agreement to an arbitrator, rather than the court. "Who gets to decide the arbitration agreement's validity—an arbitrator or a court—depends on whether there is 'clear and unmistakable' evidence that the parties agreed to delegate the validity question to the arbitrator." *Sandler v. Modernizing Med.*,

---

[2] Defendant argues in the pending motion that an agreement to arbitrate also exists because of Plaintiff's continued employment with Defendant. (Doc. No. 16-3 at 18.) Because the court finds Plaintiff entered into an express arbitration agreement, the court need not address whether Plaintiff entered into an implied arbitration agreement.

[3] Plaintiff does not argue that the arbitration agreement does not cover Plaintiff's claims in this action. Accordingly, and based on the court's own review of the agreement, the court finds that the arbitration agreement applies to Plaintiff's claims in this action.

*Inc*., 170 F.4th 1209, 1212 (9th Cir. 2026) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010)).

Defendant argues that the agreement delegates the authority to determine threshold arbitrability issues to an arbitrator because the parties agreed that the arbitration shall be governed by Judicial Arbitration and Mediation Services ("JAMS") Comprehensive Arbitration Rules & Procedures. (*See* Doc. Nos. 16-3 at 9–11; 16-1 at 33–49; 16-2 at 10.) However, Defendant ignores the clear and plain language in paragraph five of the arbitration agreement, which provides, in relevant part: "The court, not the arbitrator, shall have the power to rule on the arbitrator's jurisdiction, including any objections with respect to the existence, scope or validity of this Arbitration Agreement." (Doc. No. 16-2 at 11.)

Defendant cites cases from the Ninth Circuit and sister circuits in which courts found that the parties clearly and unmistakably intended to delegate questions of arbitrability to an arbitrator when they incorporated institutional rules into the arbitration agreement (Doc. No. 16-3 at 11), but these cases are inapposite. For example, in *Portland General Electric Co. v. Liberty Mutual Ins. Co.,* 862 F.3d 981 (9th Cir. 2017), the Ninth Circuit found that the parties "clearly and unmistakably" delegated the authority to adjudicate threshold issues to an arbitrator when they agreed to incorporate the procedural rules of the International Chamber of Commerce into the arbitration agreement. *Id.* at 985. Similarly, in *Sandler*, the Ninth Circuit found that the parties clearly and unmistakably agreed to have the arbitrator determine the validity of the arbitration agreement because the agreement incorporated the JAMS rules, which delegate the question of the agreement's validity to the arbitrator. *Sandler*, 170 F.4th at 1212. But in both *Portland General Electric* and *Sandler*, the agreement itself was silent on delegation. Here, by contrast, the arbitration agreement's language clearly and explicitly gives courts the power to determine the existence, scope, or validity of the arbitration agreement. Thus, the clear and explicit language of the arbitration agreement governs. *See Bahamonde v. Amazon.com Servs. LLC*, No. 25-cv-03499-JSC, 2025 WL 3443151, at *2 (N.D. Cal. Dec. 1, 2025) ("[A]n arbitration agreement . . . is construed like other contracts to give effect to the intention of the parties . . . . If contractual language is clear and explicit, it governs." (quoting *Aanderud v. Superior Ct.*, 13 Cal. App. 5th

880, 890 (2017))); *see also DZ Rsrv. v. Meta Platforms, Inc.*, 811 F. Supp. 3d 1072, 1076 (N.D. Cal. 2025) (finding that the plain language of an arbitration agreement clearly reserved threshold issues for the court, notwithstanding the incorporation of American Arbitration Association rules).

Thus, the court finds that the arbitration agreement does not delegate such authority to an arbitrator.

**C. Enforceability of Arbitration Agreement**

Having found that the court has the authority to determine issues of validity and enforceability, the court next addresses Plaintiff's arguments that (i) the arbitration agreement is unconscionable and therefore unenforceable, and (ii) Defendant waived its right to arbitrate.

1. Unconscionability

Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision was unconscionable at the time it was made. Cal. Civ. Code § 1670.5(a); *see also Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (explaining that an arbitration agreement may be deemed invalid on grounds of unconscionability). A "contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). An agreement to arbitrate is unconscionable only if it is both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO*, 8 Cal. 5th at 125. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal. 4th 899, 910 (2015) (citation omitted). The party opposing arbitration bears the burden of establishing that an

arbitration agreement is unconscionable. *See Shivkov v. Artex Risk Sols., Inc*., 974 F.3d 1051, 1059 (9th Cir. 2020).

When analyzing procedural unconscionability, the court begins by determining whether the agreement is a contract of adhesion. *Prostek v. Lincare Inc*., 662 F. Supp. 3d 1100, 1115 (E.D. Cal. 2023). Generally, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pinela v. Neiman Marcus Grp., Inc*., 238 Cal. App. 4th 227, 242 (2015) (quoting *Armendariz*, 24 Cal. 4th at 113). An arbitration agreement that is a "'take it or leave it' employment condition, without more, is procedurally unconscionable." *Martinez v. Master Prot. Corp*., 118 Cal. App. 4th 107, 114 (2004) (citations omitted). But an arbitration agreement is not a contract of adhesion if there is an opportunity to opt-out of it. *See Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1211 (9th Cir. 2016); *see also Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002) (opt-out provision prevented an arbitration agreement from being a contract of adhesion and supported enforceability of the agreement). "If a contract of adhesion is at issue, courts must assess whether the circumstances of the contract's formation created such oppression or surprise that closer scrutiny of the contract's overall fairness is required." *Zamudio v. Aerotek, Inc.*, 733 F. Supp. 3d 931, 943 (E.D. Cal. 2024) (citing *OTO*, 8 Cal. 5th at 126). "[T]he adhesive nature of a contract, without more, [] give[s] rise to a low degree of procedural unconscionability at most." *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1261 (9th Cir. 2017).

Here, Plaintiff argues the arbitration agreement is an unconscionable contract of adhesion. (*See* Doc. No. 17 at 8.) Specifically, Plaintiff argues Defendant imposed the agreement as a non-negotiable condition of employment. (*See id.* at 9.) Defendant argues, however, that the agreement is not adhesive because the contract expressly states that the agreement was voluntary and not made in reliance on any promises or representations other than those contained in the agreement. (*See* Doc. Nos. 16-3 at 15; 16-2 at 11.)

The court finds that the arbitration agreement is not procedurally unconscionable. First, Plaintiff has produced no evidence to support her contention that Defendant "imposed the

arbitration agreement as a condition of employment during onboarding." (Doc. No. 17 at 9.) By contrast, Defendant provides a declaration from its human resources vice president, Pat Gaudin, in which he attests he has direct knowledge of the process by which employees review and sign on-boarding documents, and that after reviewing the arbitration agreement, each employee "either agrees or declines" the agreement. (Doc. No. 16-2 at 2.) Further, Plaintiff's employment offer letter states that Plaintiff's offer "requires [Plaintiff's] understanding and execution of the included No-Third Party Obligation, Non-Disclosure, At-Will Acknowledgement," while placing no similar condition on the execution of the arbitration agreement. (*Id.* at 8.) Thus, the arbitration agreement is not adhesive.

Second, the agreement contains no other indicia of procedural unconscionability. *See Ahmed*, 283 F.3d at 1199 (considering "any other indicia of procedural unconscionability" after concluding arbitration agreement was not a contract of adhesion). The terms of the agreement are spelled out in a standalone two-page document, with clear language in all capital letters indicating that the document is a legally binding agreement to mutual arbitration and advising Plaintiff to read the document carefully. (Doc. No. 16-2 at 10–11); *see Nat'l Bank of Cal., NA v. Gay*, No. 2:11-cv-2521-RSWL-JCG, 2011 WL 2672359, at *3 (C.D. Cal. June 29, 2011) (finding that there was no element of surprise where an arbitration agreement was "not hidden or difficult to read, as it was contained in a stand-alone, three-page document").

For these reasons, the court concludes Plaintiff has not met her burden to prove the arbitration agreement is procedurally unconscionable. *See Shivkov*, 974 F.3d at 1059 ("The party opposing arbitration bears the burden of establishing that an arbitration agreement is unconscionable."). Plaintiff's failure to show procedural unconscionability forecloses her unconscionability defense under California law, which requires both procedural and substantive unconscionability. *See Armendariz*, 24 Cal. 4th at 114; *Rubio*, 2024 WL 4904512, at *7 ("As the arbitration agreement is not procedurally unconscionable, the [c]ourt need not address the issue of substantive unconscionability."); *Prizler v. Charter Commc'ns, LLC*, No. 3:18-cv-1724-L-MSB, 2019 WL 2269974, at *4 (S.D. Cal. May 28, 2019) (declining to analyze substantive unconscionability where there was no procedural unconscionability because employee had an

opportunity to opt-out of arbitration agreement).

2. Waiver

"The test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Huynh v. Allstate Northbrook Indem. Co*., 810 F. Supp. 3d 1145, 1151 (E.D. Cal. 2025) (citing *Hill v. Xerox Bus. Servs*., *LLC*, 59 F.4th 457, 468 (9th Cir. 2023)). The "waiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof." *Clark v. Barrett Bus. Servs., Inc.*, 763 F. Supp. 3d 1122, 1128 (E.D. Cal. 2025) (quoting *Van Ness Townhouses v. Mar Indus. Corp*., 862 F.2d 754, 758 (9th Cir. 1988)).

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Huynh*, 810 F. Supp. 3d at 1151 (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016)). Instead, the totality of the parties' actions should be considered. *Id.* (citing *Hill*, 59 F.4th at 471). A party "acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.* (quoting *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023)).

Here, Plaintiff contends Defendant "waived arbitration through conduct that is impossible to reconcile with any sincere intent to arbitrate." (Doc. No. 17 at 5.) Specifically, Plaintiff contends that Defendant engaged in months-long pre-litigation settlement negotiations but did not invoke its right to arbitration until well after this matter was initiated, indicating Defendant is not genuinely committed to arbitration. (*Id.* at 6.) The court does not find Plaintiff's arguments persuasive.

First, in the pending motion, Defendant seeks to compel arbitration. Indeed, Defendant initially moved to compel arbitration on December 16, 2025, approximately four months after this matter was initiated. (*See* Doc. No. 6.) Defendant filed the pending amended motion only after the hearing on its first motion was vacated because the action was reassigned from the magistrate

judge to a district judge. (*See* Doc. Nos. 8, 12, 13, 14). Defendant therefore did not make an intentional decision not to move to compel arbitration. *See Armstrong*, 59 F.4th at 1016 (finding no waiver where the defendant moved to compel arbitration within one year after the action was initiated); *Rissi v. T-Mobile USA, Inc.*, 762 F. Supp. 3d 959, 974 (S.D. Cal. 2025) (finding five-month delay in filing a motion to compel arbitration after the filing of the Complaint insufficient to justify waiver). Second, Defendant has not actively litigated the merits of the case. Defendant has not filed an answer and has not sought any ruling on the merits of Plaintiff's claims. *See Armstrong*, 59 F.4th at 1015–16 (finding no waiver where movant had not sought a ruling on the merits); *Clark*, 763 F. Supp. 3d at 1132 (finding that the filing of a counterclaim is insufficient to constitute waiver); *see also Rissi*, 762 F. Supp. 3d at 974 (finding no waiver where movant did not propound discovery). Further, Plaintiff does not identify any concrete ways in which this litigation advantaged Defendant or prejudiced Plaintiff. For these reasons, the court finds that Defendant has not waived its right to arbitration.

In sum, the court finds that the parties entered into a valid and binding agreement to arbitrate the claims in Plaintiff's complaint.[4] Accordingly, the court will grant Defendant's motion to compel arbitration and stay this action in its entirety pending the completion of arbitration of Plaintiff's claims.[5]

## CONCLUSION

For the reasons explained above:

1. Defendant's amended motion to compel arbitration of Plaintiff's claims (Doc. No. 16) is GRANTED;

---

[4] Plaintiff argues in opposition that even if the court were inclined to grant the pending motion, the court should permit limited discovery and an evidentiary hearing because the record is incomplete and material facts remain disputed. (Doc. No. 17 at 11.) Plaintiff cites no legal authority to support its argument.

[5] Defendant also argues in the pending motion that the court should dismiss this action in its entirety with prejudice. (Doc. No. 16-3 at 19–20). The court declines to exercise its discretion to dismiss this action with prejudice. *See Delgadillo v. James McKaone Enters., Inc.*, No. 1:12-cv-1149-AWI-MJS, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012) ("[O]nce a court determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration.").

2. This action is stayed in its entirety pending the completion of arbitration of Plaintiff's claims;

3. The parties shall file a joint status report ninety (90) days from the date of entry of this order, and every ninety days thereafter, regarding the status of the arbitration proceedings; and

4. Within fourteen (14) days of the completion of arbitration proceedings, the parties shall file a joint status report to notify the court of the arbitrator's decision and request that the stay of this action be lifted.

IT IS SO ORDERED.

Dated: **October 27, 2026**

Dena Coggins
United States District Judge